## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JIREH PARKER a/k/a ROCK,
a/k/a A-1,

               Defendant.

REPORT AND
RECOMMENDATION

22-CR-6203-FPG-MJP-1

---

### APPEARANCES

For the United States:

    Cassie M. Kocher
    U.S. Attorney's Office - Rochester
    100 State Street
    Rochester, NY 14614

For the Defendant:

    Michael Patrick Schiano
    The Schiano Law Office
    315 Wilder Building
    One East Main Street
    Rochester, NY 14614

### INTRODUCTION

**Pedersen, M.J.** In an indictment filed on December 22, 2022 ("Indictment"),

the Grand Jury charged defendant Jireh Parker a/k/a Rock a/k/a A-1 ("Defendant")

with two counts including: (1) Narcotics Conspiracy in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(B), both in violation of 21 U.S.C. § 846 (Count 1) and (2)

Possession of Firearms in Furtherance of Drug Trafficking Crimes in violation of 18

U.S.C. §§ 924(c)(1)(A)(i) and (2) (Count 2). (Indictment, Dec. 22, 2022, ECF No. 215.)

On March 20, 2023, Defendant filed an omnibus discovery motion. (ECF No.

222.) The government submitted a response to Defendant's omnibus motion on April

12, 2023. (ECF No. 227.) On April 27, 2023, the undersigned heard oral argument on the omnibus motion. The undersigned issued a decision on all the issues raised in Defendant's omnibus motion, except that he reserved on the following:

1. motion to suppress tangible evidence alleging that search warrants for a 2008 Ford Crown Victoria, a 1999 Mercury Grand Marquis, a 2015 Nissan Sentra, 18 Henion Street, Apartment #2, Rochester, N.Y., and 422 First Street, Rochester, N.Y. lacked probable cause;

2. motion to suppress evidence obtained and seized from the search of Defendant's cellular phone with phone number (404) XXX-7812; and

3. Motion to suppress evidence under the Title III wiretap warrant.

(Omnibus Order, May 2, 2023, ECF No. 232.)

At oral argument, the Court provided Defendant additional time to file an affidavit of standing with respect to the evidence he seeks to suppress. On May 5, 2023, Defendant filed an affidavit in which he indicated that both the 1999 Mercury Grand Marquis and 2008 Ford Crown Victoria are registered to him and that he has a reasonable expectation of privacy and security in them. (Parker Aff., ¶ 3, ECF No. 233.) In addition, Defendant indicated that he resided at 18 Henion Street, Apartment #2, Rochester, New York. (*Id*.) Finally, Defendant stated that he had a reasonable expectation of privacy and security in his cell phone with phone number (404) XXX-7812. (*Id*. ¶ 4.)

After hearing oral argument and reviewing all motion papers, the undersigned recommend that the District Court deny Defendant's motion to the extent it seeks to suppress tangible evidence related to the search warrants for the 2008 Ford Crown

Victoria, 1999 Mercury Grand Marquis, 2015 Nissan Sentra, 18 Henion Street, Apartment #2, and 422 First Street; deny Defendant's motion to the extent it seeks to suppress evidence obtained and seized from the search of Defendant's cellular phone with phone number (404) XXX-7812; and deny Defendant's motion to suppress evidence obtained under the Title III wiretap warrant.[1]

## STANDARD OF LAW

On December 22, 2022, the Honorable Frank P. Geraci, Jr. referred this case to the undersigned to address, in relevant part, all pre-trial matters, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). (Text Order of Referral, Dec. 22, 2022, ECF No. 217.)

## DISCUSSION

For this Report and Recommendation, the undersigned has reviewed and considered the following: Defendant's omnibus motion (ECF No. 222); the government's response in opposition (ECF No. 227); proffers made at oral argument, held before the undersigned on April  27, 2023; and Defendant's Affidavit. (ECF No. 233.)

***Findings of Fact Regarding Standing to Challenge the Search Warrants for the Vehicles, Properties, and Cellular Phone.***

In his initial motion papers Defendant sought to suppress evidence due to

---

[1] This Report and Recommendation is issued after the 30-day requirement provided in section 3161(h)(1)(J) due to the number and complexity of the issues in this case.

allegedly defective search warrants[2] for the following:

   A.  2008 Ford Crown Victoria, color blue, VIN#2FAHP7lVX8XI04791, registered to Jireh Parker, signed by Hon. Victoria Argento, Supreme Court Justice, on February 21, 2022.

   B.  1999 Mercury Grand Marquis, color red, VIN#2MEFM74W9XX642006, registered to Jireh Parker, signed by Hon. Victoria Argento, Supreme Court Justice, on February 21, 2022.

   C.  2015 Nissan Sentra, color gray, VIN#3NlAB7AP6EY238504, registered to Shaya Quanica Green, signed by Hon. Victoria Argento, Supreme Court Justice, on February 21, 2022.

   D.  18 Henion Street, Apartment #2, Rochester, N.Y., signed by Hon. Victoria Argento, Supreme Court Justice, on February 21, 2022.

   E.  422 First Street, City of Rochester, single family dwelling (residence of Defendant's mother, Suzanne Parker), signed by Hon. Victoria Argento, Supreme Court Justice, on February 21, 2022.

(Schiano Aff. at 4[3], ECF No. 222.) Although unclear, Defendant also appears to challenge the search and seizure of his cellular phone, phone number (404) XXX-7812. Aside from asserting his challenges to the forgoing warrants, Defendant did not provide any evidence with his initial motion, by sworn affidavit, testimony, or

---

[2] The search warrants and affidavit in support of the search warrants are on file with the Court, were issued by the State Court, and are not on the public docket, but instead were provided to the Court for an *in camera* review.

[3] Mr. Schiano's affidavit contains numerous paragraphs labeled "1." Accordingly, when referring to information in certain paragraphs the undersigned will instead reference the page number on which the relevant paragraph appears.

otherwise, that he was entitled to a reasonable expectation of privacy in any of the vehicles or properties listed above, or his cell phone. The government raised this issue in its response papers and asserted that the motion should be denied on this ground. (Gov't Resp. at 4, 7, ECF No. 227.) During oral argument, Defendant indicated that he intended to supplement his motion with an affidavit, which he provided on May 2, 2023. (Parker Aff., May 2, 2023, ECF No. 233.)

In his affidavit Defendant stated that he has "a reasonable expectation of privacy and security in [his] 2008 Ford Crown Victoria, color blue, VIN#2FAHP71VX8X104791, [his] 1999 Mercury Grand Marquis, color red, VIN#2MEFM74W9XX642006 and [his] residence at 18 Henion Street, Apt. #2, Rochester, NY." (*Id.* at ¶ 2.) He further indicated that the 1999 Mercury Grand Marquis and the 2008 Ford Crown Victoria are registered to him. (*Id.* ¶ 3.) Finally, he indicated that he has "a reasonable expectation to privacy and security in [his] cell phone, phone number (404) XXX-7812." (*Id.* at ¶ 4.)

### Legal Conclusions Regarding Standing to Challenge the Search Warrants for the Vehicles, Properties, and Cellular Phone.

Fourth Amendment rights attach only to places and things in which the individual challenging the search has "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (citation omitted); *see, e.g., Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). "It has

been clear for a generation that 'Fourth Amendment rights are personal rights that may not be vicariously asserted.'" *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (alterations omitted) (quoting *Rakas*, 439 U.S. at 133–34); *see, e.g., United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). "In evaluating [standing] claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized." *Id*. at 40.

The burden is on the defendant to show that he has a reasonable expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see also United States v. Cruz*, 475 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) ("The burden of establishing the existence of a reasonable expectation of privacy rests on the defendant."). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Sykes*, No. 05-CR-6057T, 2006 WL 2265309, at *9 (W.D.N.Y. Jul. 31, 2006), *report and recommendation adopted*, No. 05-CR-6057, 2006 WL 2711460 (W.D.N.Y. Sept. 20, 2006) (citation omitted).

Here, through the submission of his affidavit, the undersigned believes that Defendant has satisfied his burden of demonstrating a reasonable expectation of privacy in the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, and 18 Henion Street, Apartment #2. (Parker Aff. ¶¶ 2–4.) Defendant specifically indicates that he is the registered owner of both vehicles, thus establishing his standing to challenge the warrants for those vehicles. (*Id*. ¶ 3.) He also indicates that he resides

6

at 18 Henion Street, Apartment #2, which establishes his right to an expectation of privacy in that residence. *U.S. v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (quoting *U.S. v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990) (A defendant can establish that he had a legitimate expectation of privacy with respect to a home sufficient to invoke Fourth Amendment rights "by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner.")). Finally, Defendant has established a legitimate expectation of privacy in the cell phone. *See United States v. Lauria*, 2020 WL 5743523, at *5–6 (S.D.N.Y. Sept. 25, 2020) (holding that defendants' affirmations that certain cell phone and iCloud accounts belonged to them was sufficient to establish standing for a Fourth Amendment challenge); *United States v. Ray*, 541 F. Supp. 3d 355, 379–80 (S.D.N.Y. 2021) (finding that Defendant's declaration was sufficient to satisfy his burden with respect to his cellular phone with the 9122 telephone number, which was also registered to him).

However, not included in that affidavit is any mention of a privacy interest in the 2015 Nissan Sentra or 422 First Street, despite Defendant having challenged the warrants executed on the same in his omnibus motion. (*see, generally*, Parker Aff.; Schiano Aff. at 4.) Accordingly, the undersigned recommends that the District Court find that Defendant demonstrated standing to challenge the warrants for the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, and 18 Henion Street, Apartment #2, but that he lacks standing to challenge the warrants for the 2015 Nissan Sentra and 422 First Street.

***Findings of Fact Regarding the Search Warrants for the 2008 Crown
Victoria, 1999 Mercury Grand Marquis, 18 Henion Street, Apartment #2, and
cell phone, cellular phone number (404) XXX-7812.***

Defendant broadly contends that "[t]here was not proper information supplied
to the Judge to justify probable cause for the Search Warrants," and that "[t]he Search
Warrants are based on electronic monitoring of alleged 'telephone conversations of
several individuals involved in the investigation'" (Schiano Aff. at 4–5.) Defendant
does not make any individualized argument with respect to any warrant beyond the
forgoing. More particularly, he does not indicate what information was or was not
provided to Justice Argento such that her issuance of the search warrants was not
supported by probable cause. Further, Defendant does not provide any explanation
as to why he believes the warrants were improper because they were based on
conversations of several individuals allegedly involved in the investigation.

The government also makes very broad arguments in response, focusing
mainly on Defendant's allegation that items seized during the execution of the
warrants must be suppressed because the search warrant affidavit was issued based
upon inaccuracies, false, or misleading information. In sum, the government contends
that "the Search Warrant application mentions just one intercepted telephone call
from August 3, 2021. The rest of the application outlines controlled purchases of
cocaine made from [Defendant] or otherwise arranged by him," and concludes that
there was probable cause to issue the search warrants based upon the search warrant
affidavit. (Gov't Resp. at 5–6, ECF No. 227.)

**Legal Conclusions Regarding the Search Warrants for the 2008 Crown Victoria, 1999 Mercury Grand Marquis, 18 Henion Street, Apartment #2, Rochester, N.Y., and cell phone, cell phone number (404) XXX-7812.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a [place], two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the [place]." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Here, the dispute centers not on whether a crime was committed, but rather whether there was probable cause to believe that evidence of the crime would be located in the 1999 Mercury Grand Marquis, 2008 Ford Crown Victoria, and at 18 Henion Street, Apartment #2, Rochester, N.Y.

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant: "the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable

deference to the probable cause determination of the issuing magistrate. . . .”). “[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of de novo review.” *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original).

“[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.” *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (“Such deference derives not only from the law’s recognition that probable cause is a fluid concept that can vary with the facts of each case, but also from its strong preference for searches conducted pursuant to a warrant, and its related concern that [a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.” (internal quotations and citations omitted).

Justice Argento issued the three search warrants at issue, having found that the affidavit submitted by Investigator A. Taylor of the RPD established sufficient probable cause that the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, 18 Henion St., Apartment #2, Rochester, N.Y., and any cellular telephone devices[4] would

---

[4] Contained in each of the warrants for the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, and 18 Henion St., Apartment #2, Rochester, N.Y. issued by the Honorable Victoria Argento is the following language:

**Cellular Telephone Devices and Search the Contents of the Cellular Telephone Devices** for any information that tends to identify the owner/user of said cellular telephone devices, IMSI and MSN numbers associated with said cellular telephone devices, affixed to it within the battery compartment or accessible by disassembly of the phone or embedded in the memory of the phone or associated and attached SIM cards, any information regarding web

contain evidence of criminal activity. (Taylor Aff. ¶ 4 & the "Wherefore" clause, Feb. 21, 2022, on file with the Court for an *in camera* review.)

Again, Defendant claims that each of the search warrants was not supported by probable cause because (1) there was not proper information supplied to the Judge to justify probable cause for the search warrants, and (2) the search warrants are based on electronic monitoring of alleged telephone conversations of several individuals involved in the investigation. The undersigned finds Defendant's arguments to be problematic because he has only provided the Court with conclusory statements without any citation to evidence in the record or extrapolation of this assertion. The Court is not required to search through Defendant's papers to fetter out arguments for him. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotations and citations omitted); *Flores v. Tryon*, No. 15–cv–

---

connectivity including web searches and website history, and records kept electronically or digitally within the telephone's memory to include: a log of recent incoming and outgoing calls, a list of contacts or phone book, any text messages, any e-mail messages, any pictures/picture messages, any videos/video-messages, any information gleaned from applications present on the phone such as social networking sites, any information relative to location information, and any information that tends to identify the user or subscriber of the phone, including telephone number, private ID number, and IP address.

(*See*, *e.g.*, Search Warrant for 2008 Ford Crown Victoria ¶ 3 , Feb. 21, 2022, on file with the Court for an *in camera* review.)

06623–EAW, 2017 WL 3705124, *3 n. 4 (W.D.N.Y. Aug. 28, 2017) (Wolford, J.) ("it is not this Court's responsibility to raise and make counsel's arguments for them").

For these reasons, the Court recommends that the District Court deny Defendant's motion to suppress evidence seized pursuant to the search warrants executed on the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, 18 Henion St., Apartment #2, Rochester, N.Y., and any search and seizure of the cellular phone with phone number (404) XXX-7812 pursuant to those search warrants.[5]

***Findings of Fact Regarding the Title III Wiretap Warrant***

On June 30, 2021, Justice Argento found that there was probable cause based upon the affidavit of Rochester Police Investigator Jason Kamykowski[6] to issue an eavesdropping warrant for a cellular phone with phone number (404) XXX-7812. (Eavesdropping warrant and Kamykowski Aff. on file with the Court and provided for an *in camera* review.)

---

[5] It also appears that Defendant seeks to suppress any evidence seized from his cellular phone with phone number (404) XXX-7812 because the search warrants were overbroad as they allegedly do not limit the scope of the searches to the locations of data for which there exists probable cause to search. (Schiano Aff. at 14.) This argument is confusing because in reviewing the layout of Defendant's papers, this argument falls under one of two headings seeking to suppress evidence obtained via a Title III warrant and the undersigned cannot decipher under what legal authority Defendant makes the present argument. The undersigned presumes that Defendant seeks to challenge the warrants containing authority to search his cell phone as opposed to the Title III wiretap. The government does not address this argument in its papers. Given that Defendant only challenged the language contained in the search warrants relating to the search of cell phones in the most conclusory of fashions, the undersigned cannot assess the merits of the argument and therefore recommends that the District Court deny this aspect of Defendant's motion.

[6] Investigator Kamykowski provided his original affidavit in support of the wiretap warrant dated June 30, 2021. He thereafter provided affidavits in support of requested extensions of the wiretap warrant on July 26, 2021, August 24, 2021, and September 23, 2021.

Defendant seeks to suppress evidence seized during the execution of the Title III warrant on the grounds that (1) it was facially insufficient because it exceeded Justice Argento's territorial jurisdiction such that it permitted the interception of communications outside of the jurisdiction of the issuing court; (2) it was not supported by probable cause; and (3) that the applying officer failed to demonstrate that the wiretap of Defendant's phone was "necessary" in the investigation into Defendant.[7] (Schinao Aff. at 7, 12–14, 19, 22–23.)

Defendant contends that the wiretap warrant exceeded Justice Argento's jurisdictional limitations, but does not extrapolate on this argument, apart from citing to *U.S. v. Glover*, 736 F.3d 509, 514 (D.C. Cir. 2013) (Schiano Aff. at 7 & 20–21, 22.) The government contends that the *Glover* case is distinguishable because it involves a warrant authorizing the installation of a "bug" in a truck parked outside of the district court's jurisdiction. (Gov't Resp. at 8–9.) The government further contends that 18 U.S.C. § 2518(3) explicitly permits a judge to issue an *ex parte* wiretap order outside of the jurisdiction where the judge is sitting "in the case of a mobile interception device." (*Id*. at 9.) In this case, the government asserts that Justice Argento authorized the eavesdropping warrant to monitor conversations over Defendant's cellular phone and, therefore, no jurisdictional defect exists such that suppression is warranted. (*Id*.)

---

[7] The arguments regarding Defendant's challenges to the eavesdropping warrant as contained in defense counsel's affidavit are repetitive and, at times, very confusing. The undersigned has endeavored to address the arguments raised therein as he understood them.

With respect to probable cause, Defendant contends that the government failed to provide a sufficient nexus between the criminal activities alleged in the application in support of the search warrant and Defendant's cellular phone. (Schiano Aff. at 12–13.) He asserts that the only nexus identified by the government is 9 telephone calls in which Defendant was involved as listed in the "Progress Reports.[8]" (*Id.* at 8, 12 & 13.) Defendant further asserts that the government's allegation that Defendant may have engaged in criminal activity did not permit it to search through the data stored on his phone. (*Id.* at 13.)

The government contends that Defendant's arguments regarding a lack of probable cause are conclusory, merely asserting that the underlying affidavit failed to establish probable cause without any further support. (Gov't Resp. at 10.) The government contends that since a presumption of validity attaches to wiretap warrants and it is Defendant's burden to overcome the presumption, Defendant's conclusory statements failed to meet his burden. (*Id.*) In addition, the government contends that the affidavits in support of the eavesdropping warrants were supported by probable cause as they established that Defendant used the "target phone to further and facilitate his cocaine trafficking activities to communicate with customers and workers." (*Id.* at 11.)

With respect to necessity, Defendant contends that the officer applying for the wiretap sought the wiretap as "the first meaningful step" in his investigation of Defendant and, therefore, suppression of the intercepted calls and information

---

[8] The "Progress Reports" are not attached to Defendant's papers and, therefore, the undersigned did not have the opportunity to review them.

derived therefrom should be suppressed. (Schiano Aff. at 19–20.) Defendant argues that "the state failed to demonstrate that normal investigative techniques, aside from observation, had been tried and failed prior to resorting to the wiretap." (*Id.* at 24.)

In response, the government contends that the necessity requirement was satisfied for the eavesdropping warrant. (Gov't Resp. at 12–13.) The government asserts that the affidavits in support of the eavesdropping warrants for cellular phone with phone number (404) XXX-7812 explained why other investigative techniques, including the use of confidential informants, surveillance, toll records, undercover officers, search warrants, and the Grand Jury would not achieve the goals of the investigation. (*Id.* at 13.)

### Conclusions of Law Regarding the Title III[9] Wiretap Warrant

At the outset, the government does not dispute that Defendant has standing to challenge the Title III application since he was specifically named in that application and therefore qualifies as an "aggrieved person" under 18 U.S.C. § 2518(10)(a). Accordingly, the undersigned recommends that the District Court find that Defendant has standing to challenge the Title III warrant.

#### Jurisdictional Argument

As with his challenge to the search warrants for the vehicles, properties, and cell phone, Defendant has only made a bare bones argument that the eavesdropping warrant was defective because Justice Argento allegedly exceeded her territorial jurisdiction when issuing it. However, the clear jurisdictional language of Title III

---

[9] "Title III" refers to the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq.

permits a judge to "authoriz[e] or approv[e] interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a *mobile interception device* authorized by a Federal court within such jurisdiction)." 18 U.S.C. § 2518(3) (emphasis added). In other words, the undersigned believes that Justice Argento was authorized by statute to issue the eavesdropping warrant to monitor conversations over Defendant's cellular phone and did not violate her territorial jurisdiction.

In support of its argument, Defendant cites only to *U.S. v. Glover*, 736 F.3d 509, 514 (D.C. Cir. 2013). Defendant does not make any effort to explain how this case supports his conclusory assertion that Justice Argento purportedly exceeded her territorial jurisdiction. In any event, the undersigned believes that the government is correct that the *Glover* case is distinguishable because in that case a district court judge in the District of Columbia authorized the Federal Bureau of Investigations ("F.B.I.") to install a "bug" in a vehicle parked outside of the district court's jurisdiction—namely in Maryland. *Id*. at 514. The District of Columbia Circuit Court found the warrant to be facially invalid because, despite the fact that the truck was parked at the Baltimore BWI Airport and the FBI's affidavit in support of the warrant made that fact clear, the warrant "explicitly stated that FBI agents could forcibly enter the truck, regardless of whether the vehicle was located in the District of Columbia, District of Maryland, or the Eastern District of Virginia." *Id*. at 511.

Here, again, the statutory language contained in 18 U.S.C. § 2518(3) specifically authorized Justice Argento to issue the eavesdropping warrant on a

mobile interception device outside of the jurisdiction rendering the *Glover* case distinguishable from the present. Accordingly, the undersigned recommends that the District Court deny that aspect of Defendant's motion seeking to suppress evidence obtained via the Title III wiretap warrant on the basis that Justice Argento exceeded her jurisdictional authority.

### Probable Cause

It is well settled that the standard for assessing probable cause for an eavesdropping warrant is no different from that required for a search warrant. *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999). In determining whether probable cause for an eavesdropping warrant exists, the issuing officer need only make a practical, common sense decision whether, given the "totality of the circumstances" set forth in the affidavit requesting such warrant, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be obtained through the use of electronic surveillance. *See Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

An affidavit in support of an application for an eavesdropping warrant demonstrates probable cause when it sets forth facts which are sufficient, under the circumstances, to indicate a fair probability of criminal activity. *United States v. Rowell*, 903 F.2d 899, 902 (2d Cir. 1990) (*citing Gates, supra*, at 236). Further, a judge's determination of probable cause should be given great deference by a reviewing court. *Gates, supra*, at 236; *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990) ("A magistrate's finding of probable cause to believe that evidence of a crime would be found on a defendant's premises is entitled to substantial deference

on appeal."). The resolution of close cases should be determined by the preference accorded to warrants. *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Ventresca*, 380 U.S. at 109.)

Here, the undersigned believes that the facts set forth in Investigator Jason Kamykowski's affidavits supported Justice Argento's finding of probable cause. Based upon the combination of: (1) information from confidential informants ("CIs"), including but not limited to a controlled purchase of cocaine by the CI from Defendant at an alleged residence of Defendant located at 377 Hayward Avenue[10] in September 2020, during which Defendant gave the CI his phone number and suggested that the CI contact him directly if he wanted larger quantities of cocaine; (2) additional purchases of cocaine made by law enforcement at that same address; and (3) law enforcement observing Defendant with the alleged head of the drug operation, Marquis Tisdale, both at Defendant's home and at 34 Third Street. (Kamykowski Aff. at 8 & 11–12[11], Jun. 30, 2021, on file with the Court for an *in camera* review.) Investigator Kamykowski asserts that Defendant, along with others, conduct drug sales and solicit drug buyers at 34 Third Street. (*Id*. at 13.)

---

[10]   It appears that both 18 Henion Street, Apartment #2, Rochester, N.Y. and 722 Hayward Avenue, Rochester, N.Y. were or are both residences of Defendant. Defendant's affidavit indicates that his residence is 18 Henion Street (Parker Aff. ¶ 2, ECF No. 233). However, according to Investigator Kamykowski, 377 Hayward Avenue was a suspected residence of Defendant at some point. (Kamykowksi Aff. at 11, on file with the Court for an *in camera* review). The undersigned mentions this to clear any confusion as this Report and Recommendation refers to two different addresses as Defendant's residence.

[11]   The undersigned will reference page numbers when referring to Investigator Kamykowski's affidavit rather than paragraphs because his affidavit is organized with sub-headings, each beginning with paragraph one, meaning there are numerous paragraphs labeled "1."

In addition, Defendant allegedly provided CIs with two phone numbers that they could use for future drug deals—(585) XXX-6629 and (585) XXX-9299. (*Id.* at 12.) Subpoenaed phone records for those two numbers show that for the period November 26, 2020 to January 26, 2021, 41 communications (calls, texts, etc.) were with the phone number associated with Marquis Tisdale. (*Id.* at 12–13.)

Further, Investigator Kamykowski's affidavit provides that in June 2021, Defendant provided a CI with a new phone number—(404) XXX-7812—to utilize for future drug purchases. (*Id.* at 14.) In June 2021, law enforcement engaged a CI to conduct a controlled purchase with Defendant. (*Id.*) Law enforcement gave the CI $200 to purchase cocaine from Defendant and listened to a phone conversation between the CI and Defendant wherein Defendant arranged for the CI to come to his alleged residence, 377 Hayward Avenue. (*Id.* at 14–15.) The CI met Defendant, gave him the $200 and Defendant gave the CI a large chunk of crack cocaine, which was positive for the presence of cocaine during a field test. (*Id.* at 15.)

Based on the forgoing, there existed a substantial basis for determining that Defendant was utilizing his telephone in furtherance of narcotics trafficking, and that a wiretap on phone number (404) XXX-7812, Defendant's cellular telephone, would uncover evidence of criminal activity. *See United States v. Rowell*, 903 F.2d 899, 902–03 (2d Cir. 1990) (upholding finding of probable cause based on informants' statements, pen register records, prior narcotics conviction, and contact with others involved in narcotics activity). Therefore, with the proper deference accorded to Justice Argento's decision, the undersigned recommends that the District Court find

that that Justice Argento had before her sufficient evidence to support her finding of probable cause to authorize the wiretap.

### *Necessity*

In Title III, Congress struck a balance between "the needs of law enforcement officials [and] the privacy rights of the individual." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997). While Title III allows for wiretaps in limited circumstances, law enforcement must apply for a court order before conducting such surveillance, 18 U.S.C. § 2518, and set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c). The district court must ensure that this standard has been met, *id.* § 2518(3)(c), so that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime," *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974).

The Second Circuit has acknowledged that "it would be in some sense more efficient to wiretap whenever a telephone was used to facilitate the commission of a crime. But the statutory requirement . . . reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high." *United States v. Lilla*, 699 F.2d 99, 105 n. 7 (2d Cir.1983). In other words, the question is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement. With these concerns in mind, courts have emphasized that "generalized

and conclusory statements that other investigative procedures would prove unsuccessful" will not satisfy Title III. *Id.* at 104.

However, the government is not required to exhaust all possible investigative techniques before resorting to electronic surveillance. "[T]he statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Diaz*, 176 F.3d at 111 (alteration and internal quotation marks omitted).

Here, the undersigned believes that Investigator Kamykowski's affidavits sufficiently explained the exhaustion of the investigative techniques to support Justice Argento's wiretap authorization. This case involves an investigation into a multi-level drug distribution network with the goals of "identify[ing] and dismantle[ing] the targets of [the] investigation and to seize the largest quantities of narcotics from the channels of trade." (Kamykowski Aff. at 1, Jun. 30, 2021, provided to the Court for an *in camera* review.) Investigator Kamykowski explained that he has made use of CIs in this investigation, but their use has its limitations as the CIs are unable to introduce an undercover officer ("UC") to the targets of the investigation so that the UC could purchase drugs and/or infiltrate the drug organization. (*Id.* at 18–19.) In addition, Investigator Kamykowski explained that the CIs lacked access to information regarding the inner workings of the higher levels of the drug organization. (*Id.*)

Investigator Kamykowski also explained that law enforcement conducted surveillance as part of the investigation. (*Id.* at 19.) The surveillance aided in identifying locations and vehicles utilized by the targets of the investigation, but he

explained that this, alone, would not achieve the goals of the investigation. (*Id.*) Investigator Kamykowski stated that surveillance has limitations because it does not reveal whether a location is a stash location, whether someone is engaging in criminal activity, and because the targets would not always drive the same vehicles, but rather borrow them from others or rent them, making tracking them difficult. (*Id.* at 20.) With respect to Defendant, his residence at 377 Hayward Avenue has its own surveillance system, which Investigator Kamykowski explained made it difficult to conduct surveillance on that residence without the risk of being discovered. (*Id.*) Investigator Kamykowski also indicated that surveillance in this investigation has been "drive by" or "moving" because the target locations are in residential or commercial areas and a stationary vehicle could draw attention. (*Id.*) He stated that both he and other members of the Special Investigations Section have attempted to follow targets of the investigation, including Defendant, on several occasions but that on those occasions, the individuals drove very cautiously, consistently checking their mirrors, and drove as if to avoid having anyone follow them. (*Id.*)

Investigator Kamykowski also explained that he analyzed Defendant's call logs from his cellular phone with phone number (404) XXX-7812, but that this also has limited value because it does not decipher between innocent and criminal conduct and the logs do not reveal storehouses, sources, or times/locations of pending narcotics sales. (*Id.* at 21; Kamykowski Aff. at 27, Jul. 26, 2021, on file with the Court for an *in camera* review.) Pen registers and call detail records cannot identify who actually made the calls or the contents of the calls or text messages. (*Id.*)

With respect to the use of UCs, Investigator Kamykowski stated that the CI told him that "it would be practically impossible to introduce undercover officers to the main targets of this investigation; the targets have been selling so long that they have an established customer base." (*Id.*) Investigator Kamykowski further explained that even if a UC could purchase cocaine undercover, this does not help achieve the goals of the investigation to identify other members of the organization, dismantle it, and seize the largest amount of drugs possible because introducing a UC to the lower level participant would not aid in reaching the higher levels of the organization. (*Id.*)

Investigator Kamykowski also indicated that search warrants alone would not achieve the goals of the investigation because while the execution of a warrant may result in the seizure of contraband, it is not likely that it would reveal information regarding the vertical structure of the drug organization or that all co-conspirators would be present at the time of execution. (*Id.* at 22.) He also stated that it is unlikely that a search warrant would result in any records that would show the real names and addresses of those involved in the drug conspiracy, or the dates of deliveries and locations, and thus would not, alone, achieve the goals of the investigation. (*Id.*)

Finally, Investigator Kamykowski explained that the use of a Grand Jury investigation in this case is impractical and would likely raise the suspicions of the targets, alerting them to the investigation. (*Id.*) The Monroe County District Attorney's Office could compel testimony through a subpoena, but it cannot ensure that anyone providing testimony would keep the questions asked of them confidential. In addition, Investigator Kamykowski said that too little was known

about those involved in the drug conspiracy to determine whose testimony should be compelled in return for immunity. (*Id*.)

Based upon the forgoing, the undersigned recommends that the District Court find that Investigator Kamykowski's affidavit aptly demonstrates how the government "tried and failed" to completely achieve the goals of its investigation without utilizing a wiretap and why the other investigatory techniques "reasonably appear[ed] to be unlikely to succeed." *See* 18 U.S.C. § 2518(1)(c).

## CONCLUSION

Based upon the forgoing, the undersigned recommends that the District Court:

a. deny that aspect of Defendant's motion seeking to suppress tangible evidence related to search warrants for the 2008 Ford Crown Victoria, 1999 Mercury Grand Marquis, 2015 Nissan Sentra, 18 Henion Street, Apartment #2, 422 First Street, and cellular phone with phone number (404) XXX-7812;

b. deny that aspect of Defendant's motion seeking to suppress evidence under the Title III wiretap warrant.

(ECF No. 222.)

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:     July 10, 2023
           Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge